1  `

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   DONALD DOUGLAS BONE,              )      No. C 01-4971 MMC (PR)
                                       )
13                  Petitioner,        )      **ORDER DENYING PETITION FOR**
                                       )      **A WRIT OF HABEAS CORPUS**
14         v.                          )
                                       )
15                                     )
     GAIL LEWIS, Warden,               )
16                                     )
                    Respondent.        )
17   _____)

18        Petitioner, a California prisoner proceeding pro se, filed the above-titled petition for a

19   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court ordered respondent to show

20   cause why the petition should not be granted based on the cognizable claims in the petition,

21   specifically, the third, seventh and eighth claims.  Thereafter, the Court granted respondent's

22   motion to dismiss, on the ground the eighth claim, alleging a violation of the Double

23   Jeopardy Clause, was not exhausted.  Petitioner was granted leave to file an amended petition

24   with the Double Jeopardy claim deleted, which he did, and the matter was stayed while he

25   exhausted that claim.  The Court thereafter granted petitioner leave to file a Second Amended

26   Petition, and ordered respondent to show cause why the petition should not be granted based

27   on the Double Jeopardy claim set forth in the Second Amended Petition and the two

28

United States District Court
For the Northern District of California

1   cognizable claims set forth in the First Amended Petition.[1]  Respondent has filed an answer

2   and a supporting memorandum of points and authorities, and has lodged exhibits with the

3   Court.  Petitioner has filed a traverse.

4                           **PROCEDURAL BACKGROUND**

5           By an information filed August 10, 1998, petitioner was charged in Santa Clara

6   County Superior Court with one count of aggravated sexual assault upon a child in violation

7   of California Penal Code § 269.  A  motion to dismiss pursuant to California Penal Code

8   § 995 was filed on September 29, 1998.  On September 30, 1998, petitioner waived his right

9   to a jury trial, agreed to a court trial, and waived his confrontation rights to the extent of

10  allowing the child's videotaped testimony from the preliminary hearing to be presented at

11  trial in lieu of her live testimony.  The following day, October 1, 1998, petitioner agreed to a

12  plea bargain, pursuant to which the original charge was dismissed in exchange for

13  petitioner's guilty plea to an amended information alleging one count of continuous sexual

14  abuse of a child in violation of Penal Code § 288.5 and four counts of lewd and lascivious

15  conduct upon a child in violation of Penal Code § 288(a) (Counts 2-6, respectively).

16          Petitioner subsequently retained new counsel and, on January 4, 1999, filed a motion

17  to withdraw his guilty plea on the grounds he had not received effective assistance of counsel

18  and the plea was not knowing and voluntary.  The trial court held a hearing on the motion, at

19  which petitioner testified; the trial court thereafter denied the motion, finding the plea

20  knowing and voluntary and the representation adequate.  On February 26, 1999, the trial

21  court sentenced petitioner to a term of 24 years in state prison (16 years on Count 2 and four

22  consecutive two-year terms on Counts 3 through 6).  A ten thousand dollar restitution fine

23  was imposed, and a second such fine was suspended.

24          Petitioner filed a direct appeal in the California Court of Appeal; he also filed therein

25

26          ───────────────

        [1]The First Amended Petition alleged the third and seventh claims from the original petition;
27  the Second Amended Petition alleged only the Double Jeopardy claim.  The Second Amended
    Petition was deemed an amendment to the First Amended Petition, as it was clear petitioner intended
28  to proceed on all three cognizable claims.  Except as otherwise noted, the First and Second Amended
    Petitions are referred to collectively herein as the "petition."

                                              2

a petition for a writ of habeas corpus, alleging a claim of ineffective assistance of counsel. The Court of Appeal affirmed the conviction and subsequently denied the petition. The California Supreme Court denied petitions for review of the Court of Appeal's decisions. A subsequent habeas petition filed in the California Supreme Court likewise was denied.

## FACTUAL BACKGROUND

Petitioner does not dispute the following facts, which are taken from the opinion of the California Court of Appeal:

> Victim, who was born on January 16, 1991, is defendant's adopted daughter. At the preliminary hearing, Victim testified that over the course of three to four years, starting when she was four years old, defendant had molested her "a lot of times." Over that period of time, defendant touched Victim's vagina four to seven times, licked her vagina, put his penis in her mouth and vagina, and opened her butt and put his finger in. Defendant also made Victim touch and lick his penis. Defendant ejaculated once in Victim's mouth. When defendant put his penis in Victim's vagina, it hurt Victim "a little bit." Defendant also dressed up Victim in black clothes to reveal her butt, videotaped Victim's butt, and showed pornographic movies and magazines to Victim. The molestation occurred at the family residence, usually in defendant's bedroom and Victim's bathroom. Once, defendant did it at a Motel 6.
>
> Defendant admitted to his social worker that he had sexually molested Victim 20 to 30 times starting shortly after her fifth birthday. Defendant also confessed to Sergeant Zaragoza on March 19, 1998, that he had sexually molested Victim during the course of approximately three years. In his confession to Zaragoza, defendant stated he had touched Victim's vagina "20 or 30" times, beginning when Victim was "about 4 years old, just becoming a child. Not a baby anymore." Defendant masturbated his penis between Victim's legs, close to her vagina, "rubb[ing] it very closely on . . . just the outer, the outer part" of her vagina. He orally copulated her vagina and had her lick his penis a dozen times or more. When defendant was aroused, he ejaculated on Victim's body. Defendant used hair lotion as a lubricant. On March 18, 1998, the day before his arrest, defendant rubbed his penis against the outer part of Victim's vagina. This was at approximately 8:00 p.m., after Victim had finished her bath.
>
> Defendant's confession to Zaragoza was stipulated to by the parties during the preliminary hearing, introduced into evidence, and made part of the record.

People v. Bone, No. H019966, slip op. 1, 2 (Cal. Ct. App. Dec. 7, 2000) ("Slip Op.") (attached as Resp. Ex. F).

**DISCUSSION**

A.      Standard of Review

        The initial petition in this case was filed after the effective date of the Antiterrorism
and Effective Death Penalty Act of 1996 ("AEDPA").  Consequently, the provisions of
AEDPA are applicable.  See Lindh v. Murphy, 521 U.S. 320, 327 (1997).  Under AEDPA, a
district court may not grant a petition challenging a state conviction or sentence on the basis
of a claim that was reviewed on the merits in state court unless the state court's adjudication
of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court of the
United States; or (2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.
§ 2254(d).

B.      Issues Presented

        1.      Ineffective Assistance of Counsel

        In his first claim, petitioner states: "I was denied constitutional rights to effective
assistance of counsel AND unvolunatry [sic] and uninformed acceptance of plea." (emphasis
in original).  For a petitioner who pleads guilty in state court, the only challenges available to
be pleaded in a federal habeas petition are with respect to the voluntary and intelligent
character of the plea and the advice of counsel to enter such plea. See Tollett v. Henderson,
411 U.S. 258, 267 (1973); see also Hill v. Lockhart, 474 U.S. 52, 56 (1985).  Moreover,
where, as here, the petitioner pleads guilty upon the advice of counsel, he may only attack the
voluntary and intelligent character of that plea by showing the advice he received from
counsel was not within the range of competence demanded of attorneys in criminal cases.
See id.  To succeed on such a claim, a petitioner must satisfy the two-part standard of
Strickland v. Washington, 466 U.S. 668, 687 (1984), i.e., that his counsel's advice to plead
guilty constituted deficient performance, and that such deficient performance prejudiced his
defense.  See Hill, 474 U.S. at 57-59.

        Petitioner claims his attorney provided ineffective assistance, in that he advised

petitioner to enter a guilty plea despite the fact such plea was involuntary and uninformed.
The waiver of the constitutional rights to a trial and to a jury "not only must be voluntary but must also be knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). The defendant must also have an understanding of the law in relation to the facts. See McCarthy v. United States, 394 U.S. 459, 466 (1969). Here, the record of the change-of-plea proceeding demonstrates that the trial judge explained to petitioner each of the five counts to which petitioner indicated his intention to plead guilty. The record further reflects petitioner's express representation to the trial court that he understood the charges, that he had discussed them with his attorney, and that the elements of each of the counts had been explained to him. Petitioner also stated he understood that if he pled guilty he would be subject to a prison sentence of between 16 and 24 years, an additional parole term of up to four years, a restitution fine of $200 to $10,000, an additional general restitution fine, sex offender registration requirements, submission of blood and saliva samples, and potential deportation. Petitioner further stated that no one had made any contrary representations to him, that he was entering his plea "freely and voluntarily," that he had not been threatened or coerced, and that he was not under the influence of drugs or alcohol or suffering from any mental illness.

   In his petition, petitioner does not explain how his plea was not knowing and voluntary. Rather, he provides a series of short excerpts from the transcript of the hearing on his motion to withdraw his guilty plea, which hearing was held approximately four months after that plea was entered. Petitioner's purpose in submitting these excerpts apparently is to show that, contrary to the statements he made on the record prior to entering his guilty plea, he actually was confused, did not understand all of the consequences of the plea,[2] and needed

---

[2]The only consequence specifically referenced in the excerpts concerns the parole term, in particular, an instance when the trial court, while informing petitioner that he would be subject to up to four years of parole at the end of his sentence, stated that a violation of parole would return him to prison "like a probation violation." See Reporter's Transcript ("RT") (attached as Respt. Ex. B, Vol. 1) at 7. Petitioner appears to be arguing that his counsel should have advised him this analogy rendered his plea involuntary and uninformed, and therefore not to enter it. The trial court's analogy did not undermine the clear warning the trial court had given to petitioner that he would incur up to

more time to think.  The record of the change-of-plea proceeding contains no indication of any confusion, hesitation or lack of understanding on the part of petitioner, however. Petitioner's statements that he understood the various consequences of the plea, that he understood all the charges he faced, and that he was acting freely and voluntarily, were consistently unequivocal and unqualified.  Moreover, prior to accepting petitioner's plea, the trial court had recessed the proceedings overnight to allow petitioner time to contemplate whether he wanted to enter a guilty plea pursuant to the plea bargain offered.  Further, to whatever extent petitioner harbored any confusion about his plea, he does not assert that he ever informed his attorney of any such confusion, or that counsel had any other reason to suspect his client was confused.  Petitioner's counsel has supplied a declaration stating he discussed the plea with petitioner, and that to his knowledge, petitioner understood the charges against him and the consequences of his guilty plea, in accordance with petitioner's statements at the change-of-plea hearing.  See Respt. Ex. O ¶¶ 5-8.  Petitioner's unequivocal statements to this effect at the hearing constitute more than a sufficient basis for counsel's belief that the plea was knowing and voluntary.  Under such circumstances, counsel cannot be found to have been deficient on the claimed basis of his having advised petitioner to enter an uninformed and involuntary guilty plea.

Petitioner next contends his counsel was ineffective because he advised petitioner to plead guilty instead of pursuing a motion to dismiss the initial charge against him and a motion to suppress his confession.  Petitioner's counsel filed the motion to dismiss on September 29, 1998.  The trial court never ruled on the motion, however, because the next day, September 30, 1998, the parties notified the court they had reached a plea agreement. The trial court then recessed proceedings until the following day, October 1, 1998, at which time petitioner entered the guilty plea.  In his declaration filed herein, as well as in a letter

---

four years of "parole" as a consequence of his plea, and that a violation of "parole" would subject him to additional time in prison.  Id.  The record includes petitioner's unequivocal statement that he understood this consequence of his plea, as well as the other direct consequences of which the trial court informed him, including the prison term, restitution fines, other fines, sex offender registration requirements, blood and saliva sample requirements, and potential deportation.  See id. at 6-10.  As a result, counsel did not have a reason to advise petitioner that his plea was not knowing and voluntary.

written to petitioner's appellate attorney, petitioner's trial counsel explains that he did not

await a ruling on the motion to dismiss because the trial judge indicated during settlement

discussions that the motion would not be granted.  See Respt. Ex. O ¶ 9; see also Ex D to

Respt. Ex. I.  Petitioner does not dispute this statement by defense counsel, nor does he

suggest any additional or different arguments defense counsel should have made to ensure

the motion's success.[3]  Consequently, petitioner has not shown counsel acted unreasonably in

advising petitioner to accept the plea agreement rather than pursuing the motion to dismiss.

With respect to the motion to suppress, although petitioner, in the instant petition, fails

to identify a basis for such motion, in his state habeas petitions, petitioner argued the

confession would have been suppressed under Miranda v. Arizona, 384 U.S. 436 (1966).

Under Miranda , a suspect has the right to have counsel present during a custodial

interrogation.  Edwards v. Arizona, 451 U.S. 477, 482 (1981).  When a suspect expresses a

desire to have counsel present at the interrogation, he may not be subjected to further

interrogation by the authorities until counsel is made available to him.  Id. at 484-85 (citing

Miranda, 384 U.S. at 474).  Interrogation consists of words or actions on the part of a police

officer that the officer should know are reasonably likely to elicit an incriminating response.

Rhode Island v. Innis, 446 U.S. 291, 303 (1980).  The remedy for a violation of a suspect's

Miranda rights is suppression, at the subsequent trial, of any such incriminating responses.

See Miranda, 384 U.S. at 479;[4] see also Edwards, 451 U.S. at 480 (finding Fifth Amendment

---

[3]As noted, the motion to dismiss was made pursuant to Penal Code § 995; it was based on the contention that the testimony at the preliminary hearing was insufficient as a matter of state law to sustain the charge.  See Clerk's Transcript ("CT") at 48-53 (attached as Respt. Ex. A).  That argument subsequently was raised on appeal to the California Court of Appeal, which found the preliminary hearing transcript provided a sufficient factual basis for the plea under state law, a decision binding on this Court.  See Resp. Ex. F; see also Hicks v. Feiock, 485 U.S. 624, 629-30 & n.3 (1988) (holding interpretation of state law by state court, including interpretation announced by intermediate appellate court, binds federal court in habeas proceedings).

[4]In his state habeas petitions, petitioner also argued that the confession could have been suppressed based on a failure to notify petitioner that he had the right as a Canadian national to contact his consulate under the Vienna Convention.  It is highly unlikely that the confession would have been suppressed on that basis.  See United States v. Lombera-Camorlinga, 206 F.3d 882, 885 (9th Cir. 2000) (en banc) (holding failure to inform defendant of right to notification of consulate under Vienna Convention does not require exclusion in criminal prosecution of evidence obtained as result of post-arrest interrogation).

1   violations where trial court admitted confession obtained after request for counsel).

2          In the instant case, according to Zaragoza's police report[5], petitioner was placed under

3   arrest and, while Zaragoza was retrieving a form for admonishing petitioner of his <u>Miranda</u>

4   rights, petitioner "opted for the choice of wishing to speak to a lawyer rather than discussing

5   the case with this investigator."  <u>See</u> Ex. G to Respt. Ex. I at 1-2.  Zaragoza did not

6   discontinue the interrogation at that point, however.  Instead, according to Zaragoza's report,

7   when petitioner made this request for counsel, Zaragoza "mentioned to [petitioner] that this

8   might be the only chance that [Zaragoza], as a police officer would have to speak with him

9   and that there were always two sides to every story and this may be the only chance that he

10  would have to explain his side of the story."  <u>Id.</u>  Zaragoza's remarks were both intended to,

11  and reasonably likely to, elicit an incriminating response from petitioner and, consequently,

12  were in violation of petitioner's rights under <u>Miranda</u> and <u>Edwards</u>.[6]

13         Nevertheless, counsel here had a reasonable tactical basis for recommending that

14  petitioner accept the plea bargain rather than pursuing a motion to suppress.  As counsel

15  states in a declaration filed herein, and petitioner does not dispute, the prosecutor informed

16  counsel that if a motion to suppress the confession were filed, the prosecution would

17  withdraw its offer.  <u>See</u> Respt. Ex. O ¶ 13.  Consequently, pursuing the motion to suppress

18  would have meant going to trial, and, even with the confession suppressed, there were

19  numerous considerations that made the prospect of going to trial in this case a very bad idea

20  from petitioner's standpoint.  At trial, the prosecutor would have proved the charge of child

21  molestation by using the victim's testimony.  Petitioner would have had few options for

22  refuting this evidence.  He would not have been able to cross-examine her during the trial,

23 24          [5]The facts surrounding the questioning of petitioner as set forth in Zaragoza's report, which is attached to petitioner's state habeas petition, <u>see</u> Ex. G to Respt. Ex. I, are not disputed by either party.

25 26 27 28          [6]Although a police officer may continue an interrogation if the request for an attorney is ambiguous, <u>see</u> <u>Davis v. United States</u>, 512 U.S. 452, 459-62 (1994), Zaragoza's characterization of petitioner's request does not suggest any ambiguity.  Moreover, the fact that Zaragoza advised petitioner of his <u>Miranda</u> rights at a later stage of the interview, when the taped confession began, does not serve to cure the violation.  <u>See</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 1014-15 (9th Cir. 2004) (holding provision of <u>Miranda</u> warnings at beginning of interrogation of no consequence where petitioner asked to speak to attorney prior to such admonition and questioning).

1   because he had agreed to allow her videotaped preliminary hearing testimony to be used in

2   lieu of her live testimony.[7]  Under such circumstances, petitioner would have been left with

3   little choice but to take the stand himself.  Had petitioner testified, however, the prosecution

4   would have been allowed to introduce his confession for purposes of impeachment.  See

5   Harris v. New York, 401 U.S. 222, 225 (1971) (holding statements taken in violation of

6   Miranda may be used to impeach defendant's credibility even though inadmissible to prove

7   guilt in prosecution's case-in-chief).  Thus, even if the suppression motion had succeeded,

8   there is a strong likelihood the confession nonetheless would have been admitted in evidence

9   had the case gone to trial.

10       Other considerations also militated against petitioner's going to trial in this case.

11  Petitioner faced a life sentence if convicted at trial.  The evidence against him, as described

12  in defense counsel's declaration, was "very strong"[8] and "would have substantiated at least

13  30 or more counts of sexual molestation and oral copulation on a child under seven years of

14  age."  See Respt. Ex. O ¶ 10.[9]  As defense counsel states, if the motion to dismiss were

15  successful, the prosecutor intended to re-file the information to add numerous additional

16  charges based on the additional acts of sexual molestation described in the victim's

17  statement; the trial court also noted that the prosecutor had given such indication.  See id. ¶ 9;

18  RT at 11-12, 56-57.  Presumably, the prosecutor likewise would have been inclined to add

19  these charges if the case had proceeded to trial following a motion to suppress.  Finally,

20  defense counsel states, and petitioner does not dispute, that he discussed the foregoing facts

---

22  [7]Petitioner had expressed a strong desire to spare his daughter the trauma of going through a
trial.  RT at 46; Respt. Ex. O ¶ 11.

23
24  [8]The evidence against petitioner included not only the victim's testimony but also a videotape
showing petitioner using a doll to teach her about having sex.  See Respt. Ex. O ¶ 10.

25  [9]At the hearing on petitioner's motion to withdraw his guilty plea, the trial judge similarly
assessed the case against petitioner:

26          And I was aware of the strength of the People's case, obviously.  I saw the
            video tape of the testimony of the victim, because that was, in fact, part and parcel of
27          the 995.  And counsel asked if I would view that, and I did.  I was aware of the fact
            that he confessed.  I was aware of the fact that there was really no trial issue for the
28          defense, unless there is something that you are aware of that I'm not.
RT at 60.

1   and tactical considerations with petitioner, and petitioner agreed to proceed with the plea

2   bargain instead of pursuing the motions to dismiss and suppress.  See id. ¶¶ 9, 13-14.  Indeed,

3   at the hearing on the motion to withdraw the plea, petitioner confirmed that he believed the

4   case against him was strong, and that he knew he risked a life sentence if he did not accept

5   the prosecution's offer.  See RT at 32, 46.  In light of the foregoing tactical considerations,

6   defense counsel's decision to recommend that petitioner accept the plea agreement instead of

7   pursuing the motion to suppress was reasonable.

8          In sum, under the circumstances presented, defense counsel's advice to petitioner to

9   enter a guilty plea pursuant to the plea bargain offered by the prosecution fell well within the

10  range of competence demanded of attorneys in criminal cases.  Consequently, the claim of

11  ineffective assistance of counsel fails.[10]

12          2.    "Defective" Plea

13         Petitioner also claims that his plea was "defective on its face."  As explained above,

14  because petitioner pled guilty pursuant to the advice of counsel, the only challenge to his

15  conviction available to him on federal habeas review is that he received ineffective assistance

16  in connection with that advice.  See Hill v. Lockhart, 474 U.S. at 56; Tollett v. Henderson,

17  411 U.S. at 267.  The Court cannot discern the basis of this claim because petitioner simply

18  lists a series of short excerpts from the transcript of the hearing on his motion to withdraw

19  the plea.  The significance of these excerpts is unexplained.[11]  To the extent petitioner bases

20  this claim on something other than counsel's asserted deficiencies or double jeopardy, the

21

22          [10]Because the Court has determined counsel's representation was not deficient, it need not
    address whether petitioner suffered prejudice therefrom.  See Siripongs v. Calderon, 133 F.3d 732,
23  737 (9th Cir. 1998).

24          [11]In his traverse, in discussing the "defective" plea, petitioner further states he "received more
    than he bargained for" because he was assessed a restitution fine of $10,000 pursuant to California
25  Penal Code § 1202.4.  Petitioner also references therein the first claim from his original petition, in
    which he alleged he "was not advised of the $10,000 restitution fine."  The Court dismissed that
26  claim upon initial review because it appeared to raise an issue arising prior to entry of the guilty plea.
    See Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (holding guilty plea forecloses consideration of
27  pre-plea violations).  To whatever extent this claim did not raise a pre-plea error barred by Haring, it
    is clear from the record that the claim has no merit.  Prior to entering his guilty plea, petitioner was
28  advised by the trial court that he would be ordered to pay a restitution fine of up to $10,000, plus a
    possible additional restitution amount.  See RT at 7.  Petitioner stated that he understood.  See id.

1    claim is not cognizable.  See Hill, 474 U.S. at 56; Tollett, 411 U.S. at 267.  To the extent this

2    claim is based on the asserted deficiencies in counsel's representation and/or double

3    jeopardy, the claim, for the reasons discussed elsewhere herein, is without merit.

4            3.      Double Jeopardy

5            Petitioner claims he received duplicate punishment in violation of the Double

6    Jeopardy Clause of the Fifth Amendment.  Even assuming a double jeopardy claim is

7    exempted from the bar on review announced in Tollett, see Haring v. Prosise, 462 U.S. 306,

8    320 (1983) (holding defendant who pleads guilty nonetheless may challenge in habeas

9    proceedings "the very power of the State to bring [him] into court to answer the charge

10   brought against him") (internal quotation and citation omitted), petitioner's argument in

11   support of the instant claim is not persuasive.

12          Petitioner claims he received multiple punishments for the same offense because, as

13   pleaded in the information, the dates of the offenses in Counts 2 through 6 were overlapping.

14   At the change of plea hearing, the prosecutor made an oral motion to amend the information

15   to dismiss the initial charge and to add certain others.  Those new counts, as described by the

16   prosecutor, were a violation of California Penal Code § 288.5 "charging the dates from

17   December 1st of 1994 through January 1st of 1995" (count 2); a violation of Penal Code

18   § 288(a) where the "charging dates would be January 1st of 1995 through January 1st of 1996"

19   (count 3); a violation of Penal Code § 288(a) which "charge would be from the dates of

20   January 1st of 1996 through January 1st of 1997" (count 4); a violation of Penal Code § 288(a)

21   with "charging dates begin[ing] January 1st, 1997 through January 1st, 1998" (count 5); and a

22   violation of Penal Code § 288(a), the "charging dates being on or about March of 1998"

23   (count 6).  RT at 3-4.  As discussed, petitioner was sentenced on the five new counts.

24   Although there was a one-day overlap in four of the time periods,[12] such overlap does not

25

26          [12]After the prosecutor, in petitioner's presence, set forth the above-described dates for Counts
     2 through 6 and the trial court ordered the information so amended, the trial court stated the new
27   charges to petitioner.  RT at 3-5.  In so doing, the trial court erroneously described Count 3 as
     "alleged to have been committed on and between January 1, 1995, and June 1, 1996."  RT at 4-5.
28   This inadvertent misstatement is immaterial for purposes of the Court's analysis of petitioner's
     Double Jeopardy claim.

1  mean the counts were based on the same conduct.  Indeed, even if the offenses charged in

2  two separate counts both occurred on an overlapping day, petitioner could have committed

3  separate offenses on that date.  Petitioner confessed to molesting his daughter on 20 to 30

4  separate occasions over the course of four years.  He was punished for only five of those

5  offenses, each of which could have occurred at any point within the time periods alleged.  In

6  short, the overlap in the dates alleged in the counts to which petitioner pled guilty does not

7  support a finding that he received multiple punishments for the same offense.  Accordingly,

8  petitioner's Double Jeopardy claim fails.

9                                                    **CONCLUSION**

10         For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

11         The Clerk shall close the file.

12         IT IS SO ORDERED.

13  DATED: May 19, 2006

14                                          _____
                                                       MAXINE M. CHESNEY
15                                          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28